UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WANG FANG and MAI OLIVA THAO, | Case No.: 1:22-cv-0561 JLT SAB |
| Plaintiffs, | ORDER DENYING PLAINTIFF'S MOTION TO REMAND |
| v. | (Doc. 11) |
| FORD MOTOR COMPANY, and DOES 1 though 10, | |
| Defendants. | |

Wang Fang and Mai Olivia Thao purchased a Ford Explorer that they assert was defective and required a number of repair attempts to the transmission and engine. Plaintiffs seek to hold Ford Motor Company liable for violations of California's Song-Beverly Act, including breaching express and implied warranties given at the time of purchase. (*See generally* Doc. 1-2 at 1-7.)

Defendants filed a Notice of Removal, asserting this Court has diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1.) Plaintiffs now seek to remand the matter to the state court, asserting the Notice of Removal was untimely and Ford fails to show the amount in controversy requirement is satisfied. (Doc. 11.) Ford opposes the motion and asserts the removal was proper. (Doc. 13.) The Court finds the matter suitable for decision without oral arguments, and no hearing date will be set pursuant to Local Rule 230(g) and General Order 618. For the reasons set forth below, the motion to remand is **DENIED.**

///

1

## I.     Background and Procedural History

Plaintiffs purchased a Ford Explorer, VIN 1FM5K8GT1FGA87403, on January 15, 2017. (Doc. 1-2 at 4, ¶ 14; Doc. 1-4 at 2-4.) The Retail Installment Sales Contract for the vehicle indicates the 2015 Ford Explorer was "used" and had 29,542 miles on it.[1] (Doc. 1-4 at 2.) The RISC indicates the total sale price was $57,993.32, which included a finance charge of $6,795.35. (*Id.*) Thus, the purchase price for Plaintiffs was $51,197.97. (*Id.*; *see also* Doc. 1-1 at 4, ¶¶ 17-18.)

Plaintiffs contend Ford entered into warranty contracts with them regarding the Ford Explorer, including an express warranty, as part of the sale of the vehicle. (Doc. 1-2 at 4, ¶ 14.) According to Plaintiffs, "[d]efects and nonconformities to warranty manifested themselves within the appliable express warranty period, including but not limited to transmission and engine." (*Id.*, ¶ 15.) Plaintiffs assert that "[t]he nonconformities substantially impair the use, value and/or safety of the Subject Vehicle." (*Id.*, ¶ 16.) Plaintiffs allege they "delivered the Subject Vehicle to an authorized [Ford] repair facility for repair of the nonconformities." (*Id.*, ¶ 17.) They contend Ford "was unable to conform the Subject Vehicle to the applicable express warranty after a reasonable number of repair attempts." (*Id.*, ¶ 18.) Plaintiffs allege that "[u]nder the Song-Beverly act, Defendant had an affirmative duty to promptly offer to repurchase or replace the Subject Vehicle at the time if failed to conform the Subject Vehicle to the terms of the express warranty after a reasonable number of repair attempts." (*Id.*, ¶ 19.) However, Plaintiffs contend Ford "failed to either promptly replace the Subject Vehicle or to promptly make restitution." (*Id.*, ¶ 20.)

On March 31, 2022, Plaintiffs filed a complaint in Fresno County Superior Court, Case No. 22CECG00856. (Doc. 1-2.) Plaintiffs seek to hold Ford liable for: (1) breach of an express warranty, (2) breach of an implied warranty, and (3) violation of the Song-Beverly Act, Section 1793.2. (*Id.* at 2; *see also id.* at 4-6.) Plaintiffs indicated the court had "unlimited jurisdiction," but did not include any monetary information in their complaint. (*See generally id.* at 2-7.) The prayer for relief includes: (1) "general, special and actual damages according to proof at trial;" (2) "recession of the purchase contract

---

[1] Ford attached a copy of the RISC to the Notice of Removal. (Doc. 1-4.) Plaintiffs do not dispute the accuracy of the RISC or the information provided therein—including the "used" status, mileage, and purchase price—which Ford cited in calculating the amount in controversy. (*See generally* Doc. 11.)

2

and restitution of all monies expended;" (3) "diminution in value;" (4) "incidental and consequential damages according to proof at trial;" (5) "civil penalty in the amount of two times Plaintiffs' actual damages;" (6) "prejudgment interest at the legal rate; (7) "evocation of acceptance of the Subject Vehicle;" (8) reasonable attorney's fees and costs of suit;" and (9) "other and further relief as the Court deems just and proper under the circumstances." (*Id.* at 7-8.)

On May 11, 2022, Ford filed a Notice of Removal, asserting this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. 1.) Ford observes that Plaintiffs sought actual damages—in the amount of $51,197.97 based upon the RISC—as well as civil penalties. (*Id.* at 5-6, ¶¶ 21-26.) Based upon the prayer for relief, Ford calculates the total for actual damages and double civil penalty is $153,593.91. (*Id.* at 6, ¶ 26.) With an adjustment for mileage, Ford asserts "the total amount of damages is $132,286.62." (*Id.* at 7, ¶ 33 [emphasis omitted].) In addition, Ford observes that the Court may consider estimated attorney fees in calculating the amount in controversy, which Ford indicates "will easily exceed $20,000.00." (*Id.* at 6, ¶ 27.) Thus, Ford concludes the amount in controversy requirement exceeds the $75,000.00 minimum required for diversity jurisdiction under 28 U.S.C. § 1332. (*Id.* at 8, ¶ 35.)

On May 31, 2022, Plaintiffs filed the motion to remand now pending before the Court, asserting the damages calculation was flawed and removal was untimely. (Doc. 11.) Ford filed its opposition on June 14, 2022 (Doc. 13), to which Plaintiffs filed a reply on June 24, 2022 (Doc. 15).

**II.     Jurisdiction**

Removal of a case from state court to federal court is governed by 28 U.S.C. § 1441, which provides in relevant part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed … to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. This statute "is strictly construed against removal jurisdiction," and the party seeking removal "bears the burden of establishing federal jurisdiction." *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988) (citations omitted).

The district court has original diversity jurisdiction when all parties are diverse and the amount in controversy exceed $75,000. 28 U.S.C. § 1332(a); *see also Abrego Abrego v. Dow Chemical Co.,*

3

443 F.3d 676, 679 (9th Cir. 2006) (citations omitted).  The presence of any single plaintiff from the same state as any single defendant destroys "complete diversity" and strips the federal courts of original jurisdiction over the matter.  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005). In addition, the amount in controversy is calculated based upon "the complaint operative at the time of removal and encompasses all relief the court may grant on the complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 662 (9th Cir. 2005) ("the amount at stake in the underlying litigation … is the amount in controversy for purposes of diversity jurisdiction"). "[A]ny doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Gaus*, 980 F.2d at 566).

When, as here, a plaintiff does not identify a specific amount in controversy in the complaint, the removing party bears the burden to establish the amount in controversy at removal.  *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013).  A notice of removal must include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).  If the plaintiff does not contest the amount, the defendant's calculated amount should be accepted. *Id.* at 88.  However, if a plaintiff challenges the calculation, then "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id*.  This evidence may include affidavits, declarations, or other "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).  The party seeking to invoke the jurisdiction of the court bears the burden of supporting its jurisdictional allegations with competent proof. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  "[A]ny doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Gaus*, 980 F.2d at 566).

**III.     Discussion and Analysis**

Plaintiffs assert the removal was untimely and Ford failed to meet its burden of proof to establish diversity jurisdiction in this action.  (*See generally* Doc. 11-1.)  Ford opposes remand,

arguing that it timely removed the matter after receiving the RISC with purchase price information, and that it carried the burden to show the amount in controversy requirement was satisfied. (Doc. 13.)

### A. Timeliness

A party seeking removal must file a notice of removal within thirty days after receiving the initial pleading. 28 U.S.C § 1446(b)(1). The Ninth Circuit indicated under Section 1446, the "thirty day time period for removal starts to run from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face the facts necessary for federal court jurisdiction." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 690-91 (9th Cir. 2005). If the ground for removal is not apparent in the initial complaint, a party seeking removal must file a notice of removal within thirty days of receiving "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C § 1446(b)(3).

As noted above, Plaintiffs filed the complaint on March 21, 2022. (*See* Doc. 1-2 at 2.) Ford filed the Notice of Removal on May 11, 2022, which was beyond the 30 days contemplated by 28 U.S.C § 1446(b)(1). However, Ford asserts that "[t]he Complaint does not contain any means of ascertaining the amount in controversy." (Doc. 1 at 3, ¶ 4.) Ford contends it was able to calculate the amount in controversy only after "obtain[ing] a copy of the Retail Installment Sales Contract … for the subject vehicle from the selling dealership Lithia Ford of Fresno" on April 11, 2022. (*Id.*, ¶¶ 6-7.) Ford notes that the RISC identified the purchase price of the vehicle, which was used to calculate the amount in controversy. (*Id.*, ¶ 7.) Thus, Ford contends the thirty-day removal period began to run with the receipt of the RISC on April 11, 2022, and the removal was timely under 28 U.S.C § 1446(b)(3). (*Id.* at 3, ¶ 4.)

Plaintiffs contend "the argument that a manufacturer in a Song-Beverly case had 'no way of knowing the Amount in Controversy in this lawsuit prior to receiving the RISC from the dealership' has been characterized as 'largely implausible.'" (Doc. 11-1 at 5, quoting *Danelian v. FCA US, LLC*, 2020 WL 4697907 at *2 (C.D. Cal. Aug. 13, 2020) [modifications omitted].) Plaintiffs observe:

> In *Danelian*, the court considered the defendant's assertion of a specific amount of attorneys' fees as well as a civil penalty of two times the plaintiff's actual damages as part of the amount in controversy in finding that the manufacturer "was aware that the purchase price was substantially higher than the minimum necessary to establish the $75,000 AIC necessary for diversity jurisdiction in this context."

(*Id.*, quoting *Danelian*, 2020 WL 4697907 at *2.)  Plaintiffs note that Ford contends the amount in controversy calculation must include attorneys' fees that "will easily exceed $20,000" and civil penalties that are double the purchase price.  (*Id.* at 6-5.)  With the inclusion of fees and penalties, Plaintiffs observe that "Ford's method of calculating the amount in controversy means that the purchase price of the Subject Vehicle must have been less than $18,334 for the amount in controversy threshold not to have been met from the information contained in Plaintiffs' Complaint."  (*Id.* at 6.)  According to Plaintiffs, "[a]s in *Danelian*, this [is] simply implausible."  (*Id.*)  Assuming that these calculations are correct—without conceding the method of calculation— Plaintiffs argue that "Ford was clearly aware from the moment it was served with the Complaint on March 24, 2022 that the amount in controversy threshold had been met."  (*Id.*)  Therefore, Plaintiffs conclude the Notice of Removal was untimely.  (*Id.*)

In *Danelian*, the plaintiff filed a complaint against FCA US LLC alleging violations of the Song-Beverly Act on December 16, 2019.  *Id.*, 2020 WL 4697907 at *1.  It was undisputed by the parties that the complaint did not include purchase price information.  *Id.* at *1-2.  Danelian reported that "he provided 'informal discovery,'which included the retail installment sales contract ('RISC') for the subject Vehicle to FCA's counsel" on March 19, 2020.  *Id.* at *2.  Danelian argued that because the RISC included the total sales price, FCA "should have known the amount-in-controversy exceeded $75,000 on March 19, 2020."  *Id.*  Thus, Danelian asserted the removal filed by FCA on May 22, 2022 — "more than two months after Plaintiff provided that information to FCA"—was untimely.  *Id.*  In response, FCA argued that "on April 24, 2020 it received a 'legible' copy of the RISC from the dealership where Plaintiff purchased the Vehicle, which it claims permitted it to first determine that the AIC in this lawsuit exceeded $75,000 based on the purchase price of the vehicle."  *Id.*  The Court observed that FCA did not produce "the allegedly illegible copy it received from Plaintiff's counsel."  *Id.*  Further, FCA asserted that Plaintiff's complaint "only disclosed the 'vehicle year, make, model, and date Plaintiff purchased the vehicle on,' rendering it impossible for FCA to determine the AIC from the face of the Complaint."  *Id.*  The court rejected both arguments as "implausible," noting the RISC provided by Danelian was "legible and clearly shows the final sales price of the vehicle."  *Id.*  The court explained:

6

> [G]iven Plaintiff's undisputed evidence that she provided a copy of the RISC to FCA on March 19, 2020, that FCA had notice that this case was removable on that date because the sale price of $28,447.52 coupled with the two times civil penalty FCA relied on in its Notice of Removal clearly establishes that the AIC necessary for federal jurisdiction existed in this lawsuit.
>
> The Court also finds FCA's argument that it had no way of knowing the AIC in this lawsuit prior to receiving the RISC from the dealership to be largely implausible. See Dkt. 14 at 6. FCA manufactured the Vehicle in question, and the lawsuit stated (as FCA acknowledges) the vehicle year, make, model, and date of purchase. Dkt. 14 at 6. FCA's Notice of Removal also asserts that the attorney's fees in this action "can be reasonably considered to be at least $35,000." Dkt. 1 at 4. This means that in light of Plaintiff's request for a civil penalty of two times her actual damages (also stated on the face of the Complaint), the purchase price of the Vehicle would have to be below approximately $13,400 to fail to meet the requisite AIC of $75,000 given FCA's AIC calculations as analyzed in the Notice of Removal. The Court strongly suspects that FCA, as the manufacturer of the disputed Vehicle (which Plaintiff actually purchased for more than $28,000) was aware that the purchase price was substantially higher than the minimum necessary to establish the $75,000 AIC necessary for diversity jurisdiction in this context, regardless of the asserted illegibility of the copy of the RISC provided by Plaintiff's counsel.

*Id.* at *2. Thus, the Central District determined the removal by FCA was untimely and granted Danelian's motion to remand. *Id.* at *2-3.

As in *Danelian*, it is undisputed that Plaintiff's complaint filed in Fresno County Superior Court did not include any information concerning the purchase price of the vehicle or identify a specific amount of damages. Instead, Plaintiffs alleged only that they purchased a 2015 Ford Explorer on January 15, 2017, which indicated the vehicle was likely used, rather than new. (*See* Doc. 1-2 at 4, ¶ 14.) As in *Danelian*, Ford asserted that it first learned of the purchase price—and thus could calculate damages and amount in controversy—upon receipt of the RISC. However, unlike the defendant in *Danelian*, there is no evidence that Ford failed to file the Notice of Removal within 30 days of receiving the RISC with the purchase price information. Toward this end, it appears Plaintiffs' reliance upon *Danelian* is misplaced.

Moreover, the Court declines to find Ford was required to speculate as to the purchase price or the applicable mileage offset to calculate Plaintiffs' damages and the amount in controversy with the limited vehicle information provided in the complaint. *See Harris*, 425 F.3d at 690-91; *see also Ibarra*, 775 F.3d at 1197 ("a defendant cannot establish removal jurisdiction by mere speculation and conjecture"); *Alvarado v. FCA US LLC*, 2022 WL 1439474 at *2 (finding that without information

7

concerning the price "Plaintiff has actually paid" for a vehicle, a calculation for damages under the Song-Beverly Act was "speculative," and the defendant failed to show the amount in controversy requirement was satisfied for diversity jurisdiction). Because Ford filed the Notice of Removal within thirty days of receiving information that identified the purchase price—and Plaintiffs' actual damages— the Court finds Ford carried the burden to show the removal was timely pursuant to 28 U.S.C § 1446(b)(3).

### B.      Diversity of Citizenship

Section 1332 first requires complete diversity of citizenship, and the presence "of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." *Abrego Abrego*, 443 F.3d at 679. For purposes of diversity jurisdiction, a person is a citizen of the state in which he is domiciled, and is presumptively domiciled at the place of residence. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).

Plaintiffs report they are residents of the state of California. (Doc. 1-2 at 3, ¶ 2.) In addition, they acknowledge in the Complaint that Ford is "a Delaware Corporation." (*Id.*, ¶ 3.) Plaintiffs do not dispute that the citizenship of the parties is completely diverse. (*See generally* Doc. 11-1.) Thus, the Court finds this requirement of Section 1332 is satisfied.

### C.      Amount in Controversy

Plaintiffs argue that "Ford's amount in controversy analysis is insufficient" in the Notice of Removal for two reasons: (1) "its civil penalties estimate is speculative" and (2) the calculation includes "speculative amounts of attorneys' fees." (Doc. 11-1 at 6-7, 9 [emphasis omitted].) Thus, Plaintiffs assert that "Ford has failed to show by a preponderance of the evidence that the amount in controversy exceeds $75,000." (*Id.* at 6.)

#### 1.      Actual damages

The Song-Beverly Act defines restitution as "the actual price paid by the buyer," including collateral charges such as tax and registration fees. Cal. Civ. Code § 1793.2(d)(2)(B). However, the calculation of restitution is reduced by the amount "directly attributable to use by the buyer" prior to delivery of the vehicle to the dealer for correction of the problem that gave rise to the warranty nonconformity. *Id.* Thus, for purposes of calculating the amount in controversy, the purchase price

should be reduced by a "usage offset."[2]  *See Schneider v. Ford Motor Co.*, 756 F. App'x 699, 700-01 (9th Cir. 2018).

In the Notice of Removal, Ford noted that "[p]ursuant to the RISC, the total amount paid (purchase price) for the Subject Vehicle was $51,197.97." (Doc. 1 at 6, ¶ 24.)  Thus, Ford contends Plaintiff's actual damages under the Song-Beverly Act are $51,197.97. (*Id.*, ¶ 26.)  However, Ford acknowledges that a usage offset may be considered, which would reduce the damages. (*Id.* at 6-8, ¶¶ 28-35.)  Ford notes that the mileage at the time of purchase was 29,542 and the mileage at the time Plaintiff's first sought repairs for any "nonconformity" was 46,189. (*Id.* at 7, ¶¶ 31-32.)  Because Plaintiffs drove their Ford Explorer a total of "16,647 miles before the first presentation for a vehicle noncomformity," Ford calculated the offset figure total of $7,102.43.[3] (*Id.*, ¶ 33.)  Ford indicated this brings the "actual" damages to $44,095.54. (*Id.* at 7-8, ¶ 33.)  Plaintiffs do not dispute the accuracy of this calculation. (*See generally* Doc. 11-1 at 6-10.)  Accordingly, the Court finds Plaintiffs' actual damages under the Song-Beverly Act total $44,095.54. *See Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 88 (indicating the court should accept an uncontested calculation).

### 2. Civil penalties

The Song-Beverly Act provides that a buyer may recover "a civil penalty of up to two times the amount of damages" if the manufacturer or seller "willfully" violated a warranty or provision of the Act.  Cal. Civ. Code § 1794(c); *see also Ramos v. FCA US LLC*, 385 F.Supp.3d 1056 (E.D. Cal. 2019) (explaining civil penalties may be imposed for the willful failure of "vehicle manufacturers to promptly replace or pay restitution for their lemon vehicles" as required by Section 1793.2(d)(2) of the Act).  Generally, this civil penalty is properly included in determining the amount in controversy, as "the civil penalty under the Song-Beverly Act is akin to punitive damages, because both have the dual effect of punishment and deterrence for defendants." *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1009 (N.D. Cal. 2002); *see also Gonzales v. CarMax Auto Superstores, LLC,* 840 F.3d 644,

---

[2] The offset amount is determined by multiplying the "actual price of the new motor vehicle paid or payable by the buyer … by a fraction having its denominator 120,000 and having as its numerator the number of miles traveled by the new motor vehicle prior to the time the buyer delivered the vehicle" for correction of the problem.  Cal. Civ. Code § 1793.2(d)(2)(C).
[3] Using the formula identified in the Song-Beverly Act, Ford calculated: "16,647 miles, divided by 120,000 miles, then multipled by the purchase price of the Subject Vehicle ($51,197.97)" to reach the total of $7,102.43. (Doc. 1 at 7, ¶ 33.)

648 (9th Cir. 2016) (affirming the district court's calculation of amount in controversy, which included penalties under the Song-Beverly Act). Moreover, "[c]ourts as a matter of law, calculate the amount in controversy based upon the maximum amount of civil penalties available to [a] plaintiff." *Saulic v. Symantec Corp.*, 2007 WL 5074883, at *4 (C.D. Cal. Dec. 26, 2007).

In the complaint, Plaintiffs allege that Ford "willfully failed to comply with its responsibilities under the [Song-Beverly] Act." (Doc. 1-2 at 7, ¶ 51.) Plaintiffs also allege they are "entitled to … a civil penalty of up to two times the amount of actual damages for Ford's willful failure to comply with its responsibilities under the Act." (*Id.* at 5, ¶ 25, emphasis omitted.) In the prayer for relief, Plaintiffs also request "[a] civil penalty in the amount of two times Plaintiffs' actual damages." (*Id.* at 7, ¶ 7.) Based upon these allegations in the complaint, Ford argues that "[i]ncluding civil penalties in the amount of two times the actual damages is… the appropriate measure for determining the amount in controversy." (Doc. 13 at 6-7.) On the other hand, Plaintiffs argue that "Ford has not offered any evidence whatsoever to support an award for civil penalties, and thus, it is unable to establish in its Notice of Removal what civil penalties might be imposed." (Doc. 11-1 at 7.)

Contrary to Plaintiff's assertion, Ford is not required to present evidence that it willfully violated the Song-Beverly Act to include civil penalties in the damages calculation. *See, e.g., Ricksecker v. Ford Motor Co.*, 2021 WL 6621069 at *2 (N.D. Cal. Dec. 22, 2021) (rejecting the argument that evidence a plaintiff would receive the maximum civil penalties was required prior to including civil penalties in an amount-in-controversy calculation); *Rahman v. FCA US LLC*, 2021 WL 2285102 at *2 (C.D. Cal. June 4, 2021) (noting the plaintiff argued civil penalties under the Song-Beverly Act should not be included in the calculation because the "[d]efendant has offered no evidence that he is entitled to the maximum penalty 'or, indeed, any penalties at all,'" and rejecting the argument because "Defendant is not required to prove the case against itself"); *Brooks v. Ford Motor Co.*, 2020 WL 2731830 at *2 (C.D. Cal. May 26, 2020 ("It would be absurd to suggest a defendant must offer evidence showing it willfully failed to comply with the Song-Beverly Act, given that most defendants … will deny that it willfully failed to comply…" [internal quotation marks, modification omitted]). Instead, a defendant must only show "by a preponderance of the evidence… that the Complaint seeks the maximum civil penalty authorized by the Song-Beverly Act, not that Plaintiff will actually receive

it." *Rickecker*, 2021 WL 6621069 at *2 (citing *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 415 (9th Cir. 2018)).

This Court and others previously determined that when—as here—a plaintiff alleges the action was willful and the prayer for relief includes a request for civil penalties "as provided in Song-Beverly, in an amount not to exceed two times the amount of Plaintiff's actual damages," inclusion of the civil penalties in a calculation of the amount in controversy is appropriate. *See, e.g., Quinonez v. FCA US LLC*, 2020 WL 3397565, at *3 (E.D. Cal. June 19, 2020) (addressing identical language and including civil penalties in the calculation and observing "other courts, when analyzing a complaint with the exact wording incorporated in plaintiff's complaint here, have reached the same conclusion"); *Cortez Martinez v. Ford Motor Co.*, 2019 WL 1988398, at *7 (E.D. Cal. May 6, 2019) (where the plaintiffs alleged the defendant's failure to comply with the Song-Beverly Act was willful and the prayer for civil penalty "in the amount of two times Plaintiff's actual damages," the civil penalties were "expressly placed in controversy by the complaint"); *Modiano v. BMW of N. Am LLC.*, 2021 (S.D. Cal. Mar. 16, 2021) (including civil penalties in the amount in controversy calculation because the plaintiffs "allege[d] willfulness giving rise to penalties under the Song-Beverly Act"); *Elenes v. FCA US LLC*, 2016 WL 6745424, at *5 (C.D. Cal. 2016) ("By specifically seeking the maximum civil penalty [under the Song Beverly Act], plaintiffs placed that amount in controversy.").

Because Plaintiffs clearly plead Ford acted willfully in failing to comply with the Song-Beverly Act (Doc. 1 at 1-2 at 5-7, ¶¶ 25, 51) and the prayer for relief seeks up to double the actual damages (*id.* at 7), this specific amount was placed into controversy. *See Quinonez*, 2020 WL 3397565, at *3; *Cortez Martinez*, 2019 WL 1988398, at *7. As discussed above, the amount of actual damages is $44,095.54; and twice that amount for civil penalties is $88,191.08. This amount shall be added to the calculation of the amount in controversy.

      3. Attorneys' fees

The Ninth Circuit determined that future attorneys' fees awards may be included in determining the amount in controversy under fee-shifting statutes. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 795 (9th Cir. 2018); *see also Martinez*, 2019 WL 1988398, at *7 ("Attorneys' fees are available to Plaintiffs here under California Civil Code Section 1794(d)."). District courts may exclude

11

1 future fees if they are too speculative or if the defendant fails to show with a "reasonable probability

2 that the amount in controversy exceeds the minimum." *Fritsch*, 899 F.3d at 795. "A district court may

3 reject the defendant's attempts to include future attorneys' fees in the amount in controversy if the

4 defendant fails to satisfy this burden of proof." *Id.*

5       In the Notice of Removal, Ford noted the Court may consider anticipated attorneys' fees when

6 calculating the amount in controversy, and asserted that "fees in this case will easily exceed

7 $20,000.00." (Doc. 1 at 5-6, ¶¶ 21, 23, 27.) However, Ford did not meet its burden of proof to include

8 the suggested attorneys' fees in the amount in controversy calculation. Although Ford cited the

9 declaration of counsel, Spencer Hugret—which was not filed in support of the Notice of Removal—a

10 single declaration does not support the estimate future fees with a reasonable probability. *See*

11 *Schneider*, 441 F. Supp. 3d at 914 (finding a declaration stating that "claims for attorneys' fees in these

12 cases regularly approach or exceed $50,000" and that a recent fee demand by Plaintiff's counsel

13 exceeded $300,000 was not competent proof to include fees in the calculation). The fee estimate lacks

14 the type of evidentiary support that allows for the inclusion of fees, such as fee petitions submitted in

15 similar cases. *See, e.g., Martinez*, 2019 WL 1988398 at *7 (including attorneys' fees in the amount in

16 controversy where defendant submitted "five petitions for attorneys' fees filed in other similar cases by

17 the same counsel who represent Plaintiffs here"). Furthermore, Ford does not identify the amount of

18 time tasks may take or the hourly billing rates, such that the Court may determine the reasonableness of

19 the fee estimate. *See Conrad Assocs. v. Hartford Accident & Indemnity C*o., 994 F. Supp. 1196, 1200

20 (N.D. Cal. 1998) (finding that "[the] contention that attorney fees are likely to total at least $20,000 is

21 too speculative" because the defendant failed to estimate "the amount of time each major task will

22 take" or appliable hourly billing rates). Because the $20,000.00 is purely speculative and lacks

23 evidentiary support, the Court declines to include the amount identified in its calculation of the amount

24 in controversy. *See Fritsch*, 899 F.3d at 795.

25       4.     Total amount in controversy

26       Based upon the foregoing, the amount in controversy totals $132,286.62, which includes actual

27 damages in the amount of $44,095.54 and civil penalties in the amount of $88,191.08. Accordingly,

28 Ford carried the burden to establish by a preponderance of the evidence that the amount in controversy

exceeds $75,000, even without the inclusion of attorneys' fees in the calculation, as required under 28 U.S.C. § 1332.

## IV. Conclusion and Order

For the reasons set forth above, the Court finds it has diversity jurisdiction over the matter. Accordingly, the Court **ORDERS**: Plaintiff's motion to remand (Doc. 11) is **DENIED**.

IT IS SO ORDERED.

Dated:   **August 16, 2022**

UNITED STATES DISTRICT JUDGE